May it please the court. My name is Jeremy McKinney of the law firm McKinney Perry and Culture in Greensboro, North Carolina. Assisting me today is my colleague Anne-Marie Dooley, also of Greensboro, and together we represent the petitioner Baltazar Olea Garcia. This is an immigration case. It's about a type of removal relief called cancellation of removal. One of the requirements for an applicant to receive cancellation of removal is demonstrating continuous physical presence for a period of at least 10 years. The issues in this case all stem from Mr. Olea Garcia's single departure from the United States. He has resided in this country since 1995 and continues to reside here to this day. In June of 2001, he departed back to his native country of Mexico to attend his father's funeral. On his way back into the country, also during the month of 2001, he was apprehended by immigration enforcement, he was fingerprinted, and he was returned to his native country. From there, still during June 2001, he subsequently entered without inspection and resumed his residency in the United States. Ten years later, in removal proceedings, the government was unable to fingerprinting stemming from this encounter and yet argued that Mr. Olea Garcia's departure was a departure under threat of removal and that his departure was formal and documented. Now, there's two issues for the court. One can be seen as a facial challenge. Petitioner is contesting the BIA's construction of continuous physical presence, in their case, matter of Roma Law's al-Qaeda. Whether a departure under threat of removal but without the actual initiation of removal proceedings or even expedited removal proceedings disrupts continuous physical presence. The second issue before the court is can be seen as an as-applied challenge. Assuming that such a departure under threat of removal is valid and that it can disrupt continuous physical presence, was Mr. Olea's Garcia departure in this case? Don't we have a large, large number of circuits that have said a voluntary departure under a threat of deportation or removal is a break in physical presence. Absolutely. So why should we make ourselves an outlier and create a conflict for the Supreme Court as we indicated to reverse us on? Fundamentally because it's the right thing to do. But furthermore, if you look at the circuit courts decisions, most of these courts assumed without even discussing that the board was entitled to Chevron deference. In other words, they saw a... I'm sorry, sir? They held that. They did conclude that, yes. Yes, they did conclude it and you take issue with the reasoning but it may... you say, well, they didn't explain themselves in extensive reasoning. Well, some of them did and those that didn't may have thought the issue was pretty clear that this was a matter on which the BIA deserved deference. Yes, Your Honor. What those courts did was all, in essence, accept the BIA's reasoning that the definition of continuous physical presence as created by Congress in 1996... So you do... you do agree that we would be creating a circuit conflict with quite a large number of our sister circuits? Absolutely, Your Honor. On issue one in this position for review, yes. On the second issue, I actually believe that we would... ruling in the petitioner's favor would be consistent with the case law in this area. And why should we create a circuit conflict when it... it isn't all that clear that the 9,180 day periods were meant to be the presence? I mean, it's okay to create a circuit conflict but there ought to be some pretty doggone good reason for doing so. Absolutely, Your Honor. In this case, what the board did was violate basic tenets of statutory construction. We have here a situation where Congress repealed suspension... what is called suspension of deportation. That was a form of removal relief prior to 1996 and replaced it with cancellation. In doing so, they deliberately struck what is called the brief, casual, and innocent test upon which departures under threat of removal stems from and replaced it with this bright line 9,180 rule. In doing so, Congress made a deliberate decision. What they chose to do, Your Honor, but if you look at the INA as a whole, in 1996 Congress rewrote a large quantity of the Immigration Nationality Act. But you're... aren't you trying to get... you're saying, well, all of these other circuit courts have added a gloss to the statute. Aren't you adding... aren't you asking us to add a gloss to the statute and simply insert the word exclusive? No, Your Honor. You're asking us to add a gloss to the statute which is that the 90, 100, and 80 day periods shall be the exclusive means of establishing a break-in presence. What we're asking the court to do is provide the only reading which is consistent with the plain language of the law. Your to do was define what brief means. Now, regarding casual and innocent, Congress simultaneously... They were doing so for trips and journeys home and what... whatever. I don't think they were... they weren't doing it in terms of voluntary and there's a... there are other sections of the statute. This section of the statute seems to me to speak to a trip somewhere or a journey home or the kind of trips that, you know, people normally make internationally under one condition. But what we have here is something very different from, you know, just going to visit the family or, you know, going back home for a while. We have... we have here a voluntary departure under threat of deportation and that's... that's a different kettle of fish from 1229B. I... well, the government's contention is that an administrative voluntary departure took place here. We would contend that the evidence shows a simple turnaround. Yes, but your facial challenge is the... that any... I'm sorry for interrupting, Your Honor. Your facial challenge requires us to assume that it was a voluntary departure. I agree. Under threat of deportation. If you look at the... Which is meant, of course, to end the alien's presence in the United States and we... you want us to interpret the statute to say that when someone is subject to a procedure meant to end their presence, they then re-enter illegally to resume their presence, that that doesn't constitute of a break in physical presence. That's not going to... I can tell you that's not going to pass the straight-face test and about nine or ten circuits have recognized it. Well, Your Honor, before moving on to the second issue, I'd just like to leave it at this. That's the way the law is written and Congress created a comprehensive scheme here that not only includes a definition of continuous physical presence, Your Honor, but also includes the creation at the same time of expedited removal. Immigration Enforcement had the tools in their bag at that time in June of 2001 to expeditiously remove Mr. Olea Garcia and thereby attach the consequence. The consequence... No, even if you're right that there's some kind of ambiguity here, you know, we're dealing with the BIA and on a question of law. They deal with this day in and day out. It would require some degree of deference to the administrative agency that has been charged with Congress with the subject matter and to say, not only are we going to run rule counter to a large number of circuits, but we're going to overturn the agency's Ramallah's the agency charged by Congress to resolve these matters. It's pretty aggressive, wouldn't you think? It's pretty aggressive? Yes, Your Honor. Absolutely. You just want us to step on the pedal? Yes, Your Honor. As we indicated in a footnote in our opening brief, it would not be unprecedented. If you look at the BIA's comparable test rules with regards to a form of relief called 212C, every circuit in this country except for the Second Circuit upheld the BIA's comparable test, comparable grounds test. It goes to the Supreme Court. Supreme Court rules unanimously that the Second Circuit is correct. I think that's the case here because the plain reading of the law dictates the outcome in this case. I want to, Your Honor, with your permission, move on to the second issue with my time remaining because I think that, thank you, the second issue is how do we apply this case law if we assume that it's correct and they're subject to deference by this court? How do we apply it in this case? In this case, what we have, the government had two pieces of evidence. Number one, a U.S. visit report. Now, U.S. visit didn't exist in 2001. That is a 2012 report that indicates that Mr. Olea Garcia's fingerprints were taken in June of 2001. We don't dispute that. As a matter of fact, the Seventh, the Eighth, and the Ninth Circuit have all concluded that fingerprinting is not sufficient evidence of a formal documented process. So we have to turn to the testimony of Mr. Olea Garcia himself. Now, it's very brief, but I would ask the court in its review to look at pages 92 and 93 of the administrative record. What do you say would would constitute formal documented process? I don't mean to sound, uh, elementary, Your Honor, but I think that a formal documented process requires a court case that has ruled in this area. You will not find one where a formal documented process was found to be formal and documented without a document. So the U.S. visit is evidence of fingerprinting and fingerprinting. Fingerprinting is evidence of an encounter, but everyone, yes ma'am? Is there any case that you have found in which you have had this, the document that's in this case, the document that is in this case that you just talked about, and the alien's testimony that they told me I could sign a voluntary departure deportation paper, or if I wanted to, could have a lawyer to see the immigration judge? Have a combination of those two things. Has there ever been a combination? You were talking, you were telling us about the precedent that said that the document that's here is not sufficient, and what I'm asking you, is there any case where you have that document and testimony like this from your client? No. No. And it's your burden, right? It is our burden of, it is our burden of proof once the government produces some evidence to indicate that a bar may apply. We're dealing here with a finder of fact, and the conclusion of a finder of fact, and the combination of the testimony plus the U.S. visit document, which is a document, that satisfied the government's burden of production, and at least put a burden on your shoulders to counter the burden of production that was met. Your Honor, in this case, at that point, accepting the, accepting the court's conclusion, at that point, the, Mr. Alea Garcia is in the position of proving a negative, and we feel that the evidence shows that he absolutely did this. It's not an impossible situation. Absolutely not. Look, I wasn't, I wasn't there. I was still in Mexico. I was, you know, on the date that you say all this occurred. Now, that's a bit awkward for him to do in light of his testimony, but there are ways. I mean, the next sentence he could have said is, but in fact, they didn't put me into process, and I didn't sign the document, but he doesn't say that. Your Honor, and I will reserve rebuttal after this. No other evidence of that to that effect. If you look at the testimony, the testimony, Your Honor, is about a conversation. Right. It's not about a document. There is no, there's no indication he was. But you didn't just sit there. You're just sitting there when another party has satisfied its burden of production. You just can't sit there. Your Honor, he didn't just sit there on our, I should say, the associate that handled this case before the immigration court, asked him to clarify his answers, and he stated, I'm not 100% sure because I do not remember exactly. All he did, all he could do is testify as to what. That's entirely equivocal. I mean, he didn't, he hasn't offered us even his word that this didn't happen. Again, he acknowledges that an encounter occurred and that he was fingerprinted, but there is no indication, there is no evidence as to the level of formality, and more importantly, there's no evidence that there was any formal documentation produced. I'll, with that, Your Honor, may I reserve the remainder for rebuttal? I have to tell you, this is not all that sympathetic a case because you have an individual that accepts voluntary departure under a threat of removal and then almost immediately thereafter reenters the country illegally, and it's, you know, it's just, this is not good conduct. Judge Wilkinson, to your point, I respectfully disagree with the threat of deportation. This was a simple, the evidence shows that this was a simple turnaround, very consistent with circuit court law and what happens every day at our border. These turnarounds happen and these individuals are not processed in any kind of formal or documented way, going to the point that the government can't produce a single document from the incident. All right, you've got some time for rebuttal to explore it further. Thank you, Judge. Why isn't there a document? Good morning, may it please the Court, Brendan Hogan for the government. In this case, it seems that there was no document because in matter of Avales, which was the second of the Board's decisions at issue in this case, they gave... Can you move that mic over just a little bit? I apologize. All right. The Board gave, enumerated a list, a non-exhaustive list of evidence that the alien accepted voluntary return under the threat of removal. And it includes fingerprints, photographs, and unfortunately for the alien in this case, his own testimony or his own statements. Furthermore, going to counsel's claim that there are no circuits that have ever held that you can find an alien accepted voluntary return without producing a document, that's not true. As we pointed out in our brief in Gutierrez in the Ninth Circuit in 2008, they found that he on his credible testimony, which is somewhat... I think his argument really was that no other circuit has accepted the document that we have here as documenting a formal departure. Well, in Gutierrez, there was less, Your Honor. There wasn't any document at all. I understand that. I understand your point here, but you would agree that if you just had the contrary to what other circuits, not the testimony, we would have to create a circuit split to find for you. I respectfully know, Your Honor, because again, under a matter of Avales, they gave an enumerated list and every court to review Avales has said that the Board's approach is reasonable, that these forms of evidence are sufficient to find that an alien... What about these circuits that have looked at the document like the document here and said it's not enough? To counsel's knowledge, there hasn't been a circuit that has... There's no circuit that does that? Not to counsel's knowledge. When your colleague stood up and said that, he was just flat wrong. To counsel's understanding, yes, Your Honor, there hasn't been a circuit where they've looked at the document and found it insufficient. So what you're resting on is the combination of the testimony and the document here. That is correct, Your Honor. It's the... But what... I mean, how is the formal written or formal documented process normally proven? I mean, how do you normally go about it? Because in a normal situation, you're not going to have testimony that's this helpful to your position. So let's say we didn't have a testimony. How does the government prove this? That would be for the board to decide. In such a case, counsel wouldn't be able to speak to how the board would rule. Pardon me? That would be for the board to decide. In the first instance, counsel can't speak to how the board would decide in the context or the facts that you just suggested. But you have some familiarity with the procedure. Well, as the Second Circuit held in Rosario, Your Honor, the formal documented process in Avala is it's not a creature of regulation or statute. It just seems that you just have to show that the alien was informed of his rights to be put in removal proceedings, his right to counsel. What form do you normally put forward? I mean, here, this isn't presented because you have his own testimony. Yes, Your Honor. So that makes it a pretty strong case for you. But suppose you didn't, just hypothetically. I'm interested in how you, I mean, you're the one that set up this requirement. I mean, the BIA in its Ramallah's Al-Qaeda decision came up with these words, formal documented process. So I assume that the BIA must have had something in mind when it wrote those words. And I want you to tell me what they had in mind. As they stated in matter of Avala, Your Honor, it could be, as for a specific government issued form, I believe in matter of Avala, they said it was the I-213, a voluntary departure or voluntary return form. Doesn't the government keep those forms? And they should, they may. Why wasn't there one in this case is what I'm asking. This is just speculation, but perhaps the attorney from the Homeland Security determined that under matter of Avala is between the very damning testimony in this case, in addition to the printout with the fingerprints, the photograph, and also noting that the petitioner in this case was a recidivist entrant. But that in and of itself was sufficient. This would be the first time in recorded history that the government has decided it has too much evidence and so wants to destroy a piece of evidence. Well, there was the 10-day filing deadline in this case, Your Honor. At the end of the hearing, the immigration judge requested briefs within 10 days. And it seems that that was just the evidence they could produce in that time period. Remember my earlier question to you? What about Tapia, the Ninth Circuit case? Well, Tapia held that I believe fingerprints and photographs alone are insufficient to find. That's just exactly what I asked you. So if you didn't have the testimony in this case, and all you had was the fingerprints and photographs, documents you do have, we would have to create a circuit split, right? Yes, Your Honor, you would. I thought you said there was no case to your knowledge. I misunderstood the question. I'm sorry. I'm probably unclear. Thank you. I mean, I think you kind of have to rest on the combination. Yes, Your Honor. And again, unfortunately for the petitioner in this case, that page is 92 to 93, and I believe it was 109 to 100. But the Ninth Circuit case doesn't say it's of no probative value. No. It just doesn't say, it just says that by itself. Yes, with Tapia, Your Honor. That's correct. But again, in Ibarra and Gutierrez. It doesn't rule it out as an evidence. It doesn't say this is inadmissible. Yes, Your Honor. It just says that standing alone, it would be insufficient. Just fingerprints. We're not confronted with that. No, Your Honor. This is more akin to, or not more akin, but just as the Ninth Circuit found in Gutierrez, very clear, credible evidence that the alien was offered voluntary return in to find that formal documented process occurred. And the same was in Ibarra and the Ninth Circuit, where the problem there was that it wasn't that the Ninth Circuit was saying testimony alone is insufficient. The problem in Ibarra was that it seemed that immigration officials had misrepresented to the petitioner his rights during that process. And does the panel have any further questions? We have no further questions. Mr. McKinney, we're happy to hear from you in rebuttal, sir. Thank you, Your Honors. Agreed that in this case, there is the question of U.S. visit report that confirms fingerprinting combined with the testimony of Mr. Olea Garcia. I would urge the court, along with Mr. Hogan, to review that actual testimony, which is very brief at 92, 93, and 109, 110 of the record. And what you will find, Your Honor, is that it is testimony about a conversation, about an encounter with immigration enforcement. What it is not a conversation, what it is not testimony about is about a document. It's not about a formal documented procedure. If you look at this, he's asked about the encounter. He recalls that he recalls his own inner struggle in being worried about being able to hire an attorney. What he's not asked is, were you presented with a document? Did you sign a document? Were you given a copy of a document? To your knowledge, was a document filed? Did you depart, sir, under threat of removal? Remember, this is all in the context, Your Honors, of leading questions by DHS counsel. And in that exchange, which is on those four pages of this administrative record, you will not see those questions. So, for the government to contend that this testimony, this testimony is evidence of a formal documented encounter, of a formal... Could they have taken him back to Mexico without the document being signed? I'm sorry, sir? Could they have taken him back without the document being signed? Absolutely.  I mean, thousands of times a year, many times every day, it's called a turnaround. And that is what happened here. The only evidence, Your Honor, is that there was a conversation between Mr. Elia Garcia and Immigration Enforcement. It was not testimony about a document. It's only four pages of the administrative record. And that, to me, is the key part of this case, is that what we're left with is testimony that's not about a document or a formal documented process. It is simply about the details of a turnaround. And when you combine that with the fact that the only documentary evidence is a U.S. visit report, you can only come to one conclusion, and that is that it is more likely than not that a formal documented process did not occur here. And that the continuous physical presence, which is required here to avoid hardship to a spouse and four kids, was not disrupted. And Mr. Elia Garcia should be allowed to continue with this cancellation of removal application. We'd urge the court not to allow such a slim, slim evidence to be consistent with the government's burden of producing some evidence. Some evidence should not be a scintilla. And that's all we have here. Fingerprinting, we know, is not good enough. This testimony is not on point. It is not on point, Your Honor. And with the stakes being so high, we would urge the court to not find it acceptable here that this cancellation application be pretermitted on this record. Any further questions, Your Honors? Thank you again for your time.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd